IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

| | | |
|---|---|---|
| ROBERT G. GALLAGHER, a/k/a BOBBY FREEMAN and BETTY FRANKLIN, | ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | No. 08-2153-STA |
| THE E.W. SCRIPPS COMPANY, THE COMMERCIAL APPEAL, TREVOR AARONSON, LANCE MURPHEY, DAVID L. FINGER, FINGER & SLANINA, LLC, DALE MASSAD, and DOES 1 through 30, | ) ) ) ) ) ) ) ) | |
| Defendants. | ) | |

**ORDER GRANTING DEFENDANTS' DAVID L. FINGER AND FINGER & SALINA, LLC, MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION**

Before the Court is Defendants' David L. Finger and Finger & Salina, LLC Motion to Dismiss for lack of Personal Jurisdiction (D.E. # 59) filed on May 9, 2008. Plaintiffs have to date not responded to Defendants' Motion. For the reasons set forth below, the Motion is **GRANTED**.

### BACKGROUND

This action is brought by Robert Gallagher and Betty Franklin, both of whom are residents of Nevada, against David L. Finger and Finger & Slanina, LLC ("Defendants"). First Amended Compl. ¶¶ 2, 3. Mr. Finger is a resident of the State of Delaware. Finger Decl. ¶ 4. Finger & Slanina, LLC ("F&S"), Mr. Finger's law firm, is a limited liability company duly

1

organized and existing under the laws of the State of Delaware. Finger Decl. ¶ 3.

Plaintiffs have alleged that Defendants defamed them in an article and short sidebar that was published in *The Commercial Appeal* on February 11, 2007 (the "Articles"). The Articles referred to a Delaware lawsuit between Plaintiffs and Richard S. Long, who was represented by Defendants. Defendant Finger gave an interview to Trevor Aaronson, the author of the Articles. However, Finger did not solicit the interview nor did he initiate contact with Aaronson or the newspaper. At the time of the interview, Finger had never been to Tennessee or transacted any business with anyone from Tennessee, or even knew anyone from Tennessee. Finger Decl. ¶¶ 5-10. Mr. Finger had no role in the writing, editing or publishing of the Articles. *Id*. at ¶ 10.

Defendants argue that this Court's exercise of personal jurisdiction over them is a violation of due process. Defendants contend that they lack the minimum contacts necessary to subject them to a judgment *in personam* in Tennessee, that is, Defendants' conduct and connection with Tennessee are such that they should not have reasonably anticipated being haled into court here. Neither Plaintiffs nor Defendants are residents of Tennessee. Finger did not solicit the interview or initiate contact with the newspaper. In fact, Finger gave the interview via telephone from Delaware. Requiring Defendants to litigate this matter in Tennessee would be unreasonable and inconvenient for the parties who would be far from home. Finally, dismissal would not undermine any public policy of the state of Tennessee or of the interstate judicial system. Therefore, Defendants seek dismissal for lack of personal jurisdiction.

Although the instant Motion was filed on May 9, 2008, Plaintiffs have yet to respond.[1]

---

[1] For most motions in this district, a failure to respond constitutes good grounds for granting the motion; however, for dispostive motions, this standard does not apply.

Although Plaintiffs have not filed a response to the instant Motion, Plaintiffs did respond to a motion to dismiss pursuant to Rules 12(b)(2) and 12(b)(6) filed while this matter was still before the United States District Court for the District of Nevada.[2] In that response (D.E. # 23), Plaintiffs briefly addressed the Nevada Court's exercise of personal jurisdiction over Finger and F&S only by stating "Defendants FINGER, LAW FIRM, and MASSAD knew the statements they were making were about Nevada residents and that Nevada residents would suffer the consequences of their statements.... FINGER and LAW FIRM have had ongoing and extensive fax and mail communications within the State of Nevada with GALLAGHER and FRANKLIN since November of 2006."[3] Plaintiffs presented no further evidentiary support or affidavits with their response. More importantly, Plaintiffs have never addressed this Court's exercise of personal jurisdiction over Defendants.

## STANDARD OF REVIEW

---

[2] The Nevada Court granted in part Defendants' Motion to Dismiss when it transferred this matter to this Court: "It does not appear that we have jurisdiction over the defendants in this case, and we will therefore not consider the merits." Order Granting Mot. Strike, Granting Mot. Dismiss in Part, and Order of Transfer, Mar. 3, 2008.

[3] Pls.' Resp. Mot. Dismiss 7-8.

When a party challenges personal jurisdiction pursuant to Rule 12(b)(2), a plaintiff bears the burden of establishing the existence of jurisdiction.[4] A plaintiff may not stand on his pleadings but must, by affidavit or otherwise, set forth specific facts showing that the court has jurisdiction.[5] In considering a properly-supported Rule 12(b)(2) motion, the court may proceed in three ways: " it may decide the motion upon the affidavits alone; it may permit discovery in aid of deciding the motion; or it may conduct an evidentiary hearing to resolve any apparent factual questions."[6] Because all parties agreed to stay discovery pending the resolution of this and another dispositive motion filed in this case, and because Plaintiffs have not raised any factual questions relative to the instant Motion, the Court will decide the Motion on the pleadings and affidavits alone.

Where the district court relies solely on written submissions and affidavits to resolve a Rule 12(b)(2) motion, the burden on the plaintiff is "relatively slight."[7] "[T]he plaintiff must make only a *prima facie* showing that personal jurisdiction exists in order to defeat dismissal."[8] The pleadings and affidavits submitted must be viewed in a light most favorable to the plaintiff, and the district court should not weigh "the controverting assertions of the party seeking dismissal."[9]

---

[4] *Serras v. First Tenn. Bank Nat'l Ass'n,* 875 F.2d 1212, 1214 (6th Cir.1989).

[5] *Theunissen v. Matthews,* 935 F.2d 1454, 1458 (6th Cir.1991).

[6] *Id.*

[7] *Am. Greetings Corp. v. Cohn,* 839 F.2d 1164, 1169 (6th Cir.1988).

[8] *Theunissen,* 935 F.2d at 1458.

[9] *Id.* at 1459.

## ANALYSIS

Personal jurisdiction over a nonresident defendant arises from "certain minimum contacts with [the forum] such that maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'"[10] In a diversity case, plaintiff must satisfy two showings that personal jurisdiction exists as to a nonresident defendant: (1) the defendant is amenable to suit under the forum state's long-arm statute; and (2) due process requirements of the Constitution are met.[11] Therefore, a court may only exercise personal jurisdiction over a nonresident defendant if it meets the state's long-arm statute and constitutional due process requirements.[12]

First, the law of the forum state determines "whether personal jurisdiction exists, subject to constitutional limitations."[13] In this case, the Tennessee long-arm statute sets forth the circumstances where an action or claim for relief might arise from a nonresident defendant's conduct within the state. Such conduct is defined as "the transaction of any business within the state; any tortious act or omission within this state; the ownership or possession of any interest in property located within this state; or entering into a contract for services to be rendered or for materials to be furnished in this state."[14] Tennessee's long-arm statute is interpreted to be

---

[10] *Int'l Shoe Co. v. Washington,* 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945) (quoting *Milliken v. Meyer,* 311 U.S. 457, 463, 61 S.Ct. 339, 85 L.Ed. 278 (1940)).

[11] *CompuServe, Inc. v. Patterson*, 89 F.3d 1257, 1262 (6th Cir. 1996).

[12] *Id*.

[13] *Calphalon Corp. v. Rowlette,* 228 F.3d 718, 721 (6th Cir. 2000).

[14] *Id*. (citing Tenn. Code Ann. § 20-2-214(a)(1), (2), (3), & (5)).

"coterminous with the limits on personal jurisdiction imposed" by the Due Process Clause of the United States Constitution.[15] Consequently, "the jurisdictional limits of Tennessee law and of federal constitutional law of due process are identical."[16]

The Court holds that its exercise of personal jurisdiction over Defendants Finger and F&S would be inconsistent with the due process requirements of the Constitution. "Depending on the type of minimum contacts in a case, personal jurisdiction can either be specific or general."[17] A court may have general jurisdiction over an out-of-state defendant when a defendant's "contacts with the forum state are of such a continuous and systematic nature that the state may exercise personal jurisdiction over the defendant even if the action is unrelated to the defendant's contacts with the state."[18] Based on the facts set forth in Defendants' Motion and Affidavit, the Court finds that general jurisdiction does not exist as to these Defendants. Defendants are, respectively, a citizen of Delaware and a law firm organized as a limited liability company under Delaware law. Nothing in the record before the Court could be construed as Defendants' continuous and systematic contacts with the state of Tennessee. Therefore, the Court concludes that it does not have general jurisdiction over Defendants.

Having found that general jurisdiction does not exist, the Court must consider whether it has specific jurisdiction over these Defendants. "An exercise of specific jurisdiction is proper

---

[15] *Id.* (citing *Payne v. Motorists' Mut. Ins. Cos.,* 4 F.3d 452, 455 (6th Cir.1993)).

[16] *Id.*

[17] *Air Products and Controls, Inc. v. Safetech Intern., Inc.*, 503 F.3d 544, 549 -550 (6th Cir. 2007) (citing *Reynolds v. Int'l Amateur Athletic Fed'n,* 23 F.3d 1110, 1116 (6th Cir.1994)).

[18] *Intera Corp. v. Henderson*, 428 F.3d 605, 615 (6th Cir. 2005) (citing *Bird v. Parsons,* 289 F.3d 865, 873 (6th Cir.2002)).

where the claims in the case arise from or are related to the defendant's contacts with the forum state."[19] The Sixth Circuit applies a three-prong test in order to determine whether specific jurisdiction exists and to protect the due process rights of a defendant:

> First, the defendant must purposefully avail himself of the privilege of acting in the forum state or causing a consequence in the forum state. Second, the cause of action must arise from the defendant's activities there. Finally, the acts of the defendant or consequences caused by the defendant must have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable.[20]

In the case at bar, the Court holds that it does not have specific jurisdiction over Defendants Finger and F&S because neither Defendant purposefully availed itself of the privilege of acting in this forum.

The "purposeful availment" prong of the *Southern Machine* test is "essential" for a court to exercise specific jurisdiction.[21] Generally, while physical presence of a nonresident is not required for personal jurisdiction, "the use of interstate facilities such as the telephone and mail is a secondary factor and cannot alone provide the minimum contacts required by due process."[22] Furthermore, the Sixth Circuit has held that the purposeful availment prong is not satisfied where a resident of the forum state, not the nonresident defendant, initiates the communications.[23] Even

---

[19] *Id*. (citing *Kerry Steel, Inc. v. Paragon Indus., Inc.,* 106 F.3d 147, 149 (6th Cir.1997)).

[20] *S. Mach. Co. v. Mohasco Indus., Inc.,* 401 F.2d 374, 381 (6th Cir.1968).

[21] *Calphalon,* 228 F.3d at 722. The *Southern Machine* court dubbed this prong a "*sine qua non.*" *Southern Machine*, 401 F.2d 381-82.

[22] *Reynolds v. Int'l Amateur Athletic Fed'n*, 23 F.3d 1110, 1119 (6th Cir. 1994) (quoting *American Greetings Corp. v. Cohn*, 839 F.3d 1164, 1169 (6th Cir. 1988)).

[23] *Harris v. Lloyds TSB Bank, PLC*, 281 Fed. Appx. 489 (6th Cir. 2008) (finding no specific jurisdiction where nonresident received but did not initiate multiple wire transfers from

when the nonresident does initiate the communication, the Sixth Circuit has found that directing a single piece of correspondence to the forum state did not amount to purposeful availment giving rise to specific jurisdiction.[24] Applying these rules to the case at bar, the Court holds that it lacks specific personal jurisdiction over these Defendants. Here Defendant Finger did not initiate or even solicit the telephone interview in which the allegedly defamatory comments were made. Finger was contacted by the reporter from the Memphis newspaper and granted an interview by telephone. It is undisputed that Defendant Finger had never traveled to this forum or transacted any business here making it difficult to see how Defendant purposefully availed himself of the privilege of acting in any way in this forum. The Court holds that these factors alone weigh against any finding of purposeful availment as to Defendants Finger and F&S.

More directly on point is *Reynolds v. International Amateur Athletic Federation* where the Sixth Circuit considered the issue of specific jurisdiction over a nonresident defendant who had allegedly made defamatory remarks about a resident of the forum state. The *Reynolds* Court held that Ohio lacked specific personal jurisdiction over a foreign defendant where that defendant had reported that plaintiff, an Ohio resident and world-class sprinter, had failed a test detecting the presence of performance-enhancing drugs.[25] The Sixth Circuit cited a number of factors which limited the application of the "effects" test the United States Supreme Court had

---

forum state); *Rice v. Karsch*, 154 Fed. Appx. 454, 460-61 (6th Cir. 2005) (finding no specific jurisdiction where nonresident responded by mail and e-mail to communication initiated in forum state); *Calphalon,* 228 F.3d at 723 (finding no specific jurisdiction where nonresident conducted telephone, fax, and email correspondence with resident corporation).

[24] *Calphalon,* 228 F.3d at 723.

[25] *Reynolds*, 23 F.3d at 1120.

earlier announced in *Calder v. Jones*.[26] First, the *Reynolds* court held that the fact that a nonresident defendant could foresee that its statements "would be circulated and have an effect in" the forum state did not in and of itself create personal jurisdiction.[27] Second, a media source in the forum, not the defendant, published and circulated the defamatory remarks.[28] Third, the defamatory remarks concerned events taking place outside the forum, particularly the plaintiff's activities outside the forum.[29] Finally, the plaintiff had failed to show that his reputation was centered in the forum or that the defendant had knowledge of the potential harm to the plaintiff's specific interests in the forum.[30]

The Court finds the facts presented here analogous to *Reynolds*. Like the defendant in *Reynolds*, Defendant Finger in giving an interview to a reporter with *The Commercial Appeal* could foresee that his comments would be circulated in this forum. However, this fact alone does not confer this Court with specific jurisdiction over Defendants Finger and F&S. As in *Reynolds*, it was media here in the forum of Tennessee, not Defendants, that circulated the

---

[26] *Id*. (citing *Calder v. Jones*, 465 U.S. 783 (1984)). *Calder* involved the exercise of personal jurisdiction over nonresident defendants who were sued for libel by a resident of the forum state. In *Calder*, the Supreme Court upheld California's exercise of specific jurisdiction over the Florida residents because

> [t]he allegedly libelous story concerned the California activities of a California resident. It impugned the professionalism of an entertainer whose television career was centered in California. The article was drawn from California sources, and the brunt of the harm ... was suffered in California. In sum, California is the focal point both of the story and the harm suffered. *Calder*, 465 U.S. at 788-89.

[27] *Id.* (citing *World-Wide Volkswagen Corp.,* 444 U.S. 286, 295, 100 S.Ct. 559 (1980)).

[28] *Reynolds*, 23 F.3d at 1120.

[29] *Id*.

[30] *Id*.

9

remarks about Plaintiffs. Third, the subject of Defendant Finger's remarks concerned events outside of this forum, namely in Nevada. The only comments Finger made were about the cancellation of an exhibition of Elvis Presley memorabilia in Las Vegas, Nevada. Further, Finger had knowledge of Plaintiffs' activities in Nevada due to the fact that Finger and F&S were engaged at the time of the interview in litigation against Plaintiffs not in Tennessee but in Delaware. Accordingly, nothing in Finger's published comments referred in any way to Plaintiffs' activities in this forum. There is absolutely no allegation that Plaintiffs' respective reputations are centered in this forum let alone that Defendant Finger could have been aware of the potential harm to any specific interests of Plaintiffs in this forum. Not only do these factors weigh against a finding of purposeful availment as to these Defendants, but unlike the defamation plaintiffs in *Reynolds* and *Calder*, Plaintiffs in this case are not even residents of this forum.[31] The Court concludes that under Sixth Circuit precedent, Defendants Finger and F&S have not purposefully availed themselves of the privilege of acting in this forum. Therefore, this Court lacks any basis for exercising specific personal jurisdiction consistent with due process as to these Defendants.

The Sixth Circuit's purposeful availment analysis is in harmony with cases even more directly on point from other Circuits, which Defendants have cited in their brief. In *Ticketmaster-New York, Inc. v. Alioto*, the First Circuit held that Massachusetts did not have personal jurisdiction over a California defendant for allegedly defamatory statements the

---

[31] *Cf. Reynolds*, 23 F.3d at 1120; *Far West Capital, Inc. v. Towne*, 46 F.3d 1071, 1079 (10th Cir. 1995)

California defendant made in a telephone interview with a Massachusetts reporter.[32] The statements were directed at a Delaware corporation and appeared in a Massachusetts newspaper. The Delaware corporation brought its defamation action against the California defendant in Massachusetts. In affirming the lower court's dismissal for lack of personal jurisdiction, the First Circuit ruled that the California defendant had not purposefully availed himself of the opportunity to act in Massachusetts because he did not initiate the telephone interview. Furthermore, Massachusetts' interest in "redressing torts committed" in its jurisdiction was weakened by the fact that the defendant gave the interview by telephone outside of Massachusetts. In a similar case, *Madara v. Hall*, the Eleventh Circuit affirmed the dismissal of a libel action for lack of personal jurisdiction where a New York defendant made allegedly libelous statements during a telephone interview to a California reporter.[33] The plaintiff brought suit against the New York defendant in Florida. The *Madara* court held that Florida did not have specific personal jurisdiction over the defendant because defendant did not purposefully direct his activities at that forum and had no reason to anticipate being haled into court in that forum when he gave the interview.[34] These cases only provide further support for the Court's determination that its exercise of personal jurisdiction over these Defendants would violate due process.

It is true that the Sixth Circuit stated in *Neal v. Janssen* that "[w]hen the actual content of the communications into the forum gives rise to an intentional tort action, that alone may

---

[32] 26 F.3d 201 (1st Cir. 1994).

[33] 916 F.2d 1510 (11th Cir. 1990).

[34] *Id*. at 1516-17.

constitute purposeful availment."[35] Defendant Finger allegedly made defamatory statements in his telephone interview which were reproduced in the *Commercial Appeal*, the largest daily newspaper of Memphis, Tennessee. Thus, arguably the content of Finger's communications into this forum gave rise to an intentional tort. Nevertheless, the Court finds this rule inapposite to the facts presented here.[36] In *Neal*, the nonresident defendant initiated fraudulent telephone calls and faxes into the forum state for the purpose of intentionally defrauding the recipients of the communications.[37] The *Neal* court held that "the actions of sending false information into [the forum state] by phone and fax had foreseeable effects in [the forum state] and were directed at individuals in [the forum state]."[38] Here, neither Plaintiffs nor Defendants Finger and F&S are residents of the forum state. Defendant Finger did not initiate the interview with the reporter in Tennessee, and there is no allegation that Finger participated in the interview with the intention and for the purpose of defaming Plaintiffs. The Court finds that Finger's telephone interview did not have the kind of foreseeable effects in this forum that were evident in *Neal*. Nor were Finger's allegedly defamatory statements directed at individuals in this forum. Thus, the Court believes that *Neal* is distinguishable from the facts in the case at bar.

In light of all these principles and the facts presented here, the Court finds that Defendant Finger's telephone interview, which he did not initiate, is the type of random, fortuitous, and

---

[35] *Neal v. Janssen*, 270 F.3d 328, 332 (6th Cir. 2001)

[36] *See also*, *Alioto*, 26 F.3d 201, 205 (distinguishing exercise of personal jurisdiction over defendant for tort of fraudulent misrepresentation and personal jurisdiction over defendant for tort of defamation).

[37] *Id*.

[38] *Id*.

attenuated contact that "the purposeful availment requirement is meant to prevent from causing jurisdiction."[39] Having failed to satisfy this first and essential prong of specific jurisdiction, the Court finds that it cannot exercise specific jurisdiction over Defendants Finger or F&S. Therefore, Plaintiffs have failed to establish that this Court has personal jurisdiction as to these Defendants.

## CONCLUSION

The Court concludes that its exercise of personal jurisdiction over Defendants Finger and F&S would violate due process. Therefore, Defendants' Motion to Dismiss Pursuant to Rule 12(b)(2) is **GRANTED**.

**IT IS SO ORDERED.**

s/ S. Thomas Anderson
S. THOMAS ANDERSON
UNITED STATES DISTRICT JUDGE

Date: December 4th, 2008.

---

[39] *Rice*, 154 Fed. Appx. at 463 (citing *Calphalon,* 228 F.3d at 723).