**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TENNESSEE**
**WESTERN DIVISION**

| | | |
|---|---|---|
| ROBERT G. GALLAGHER, a/k/a | ) | |
| BOBBY FREEMAN and BETTY | ) | |
| FRANKLIN, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | No. 08-2153-STA |
| | ) | |
| THE E.W. SCRIPPS COMPANY, | ) | |
| THE COMMERCIAL APPEAL, | ) | |
| TREVOR AARONSON, LANCE | ) | |
| MURPHEY, DALE MASSAD, and | ) | |
| DOES 1 through 30, | ) | |
| | ) | |
| Defendants. | ) | |

_____

**ORDER GRANTING DEFENDANTS' MOTION TO DISMISS FOR FAILURE TO**
**STATE A CLAIM**

_____

Before the Court is Defendants' The E.W. Scripps Company, *The Commercial Appeal*,

Trevor Aronson, Lance Murphey, and Dale Massad Motion to Dismiss for failure to state a claim

(D.E. # 49-12) initially filed on May 30, 2007, and supplemented by Defendants on July 20,

2007 (D.E. # 49-29) and again on May 5, 2008 (D.E. #60).[1]  Plaintiffs responded in opposition to

Defendants Motion to Dismiss on June 18, 2007 (D.E. # 49-24) and supplemented on August 1,

2007 (D.E. #49-34).

This case was initially filed in the United States District Court for the District of Nevada

_____

[1] The initial Motion to Dismiss was filed before the United States District Court for the
District of Nevada.  Following transfer to the Western District of Tennessee, Defendants filed
their Supplemental Memorandum on May 5, 2008.  This Court dismissed Defendants David
Finger and Finger and Salina by order (D.E. # 66) dated December 4, 2008.

and later transferred to the Western District of Tennessee on March 6, 2008.  Plaintiffs have to date not responded to Defendants' arguments pursuant to Tennessee law since this case was transferred to this Court from the Nevada Court.[2]  For the reasons set forth below, the Motion is **GRANTED**.

## BACKGROUND

This action is brought by Robert Gallagher ("Gallagher") and Betty Franklin ("Franklin"), both of whom are residents of Nevada, against Defendants The E.W. Scripps Company, *The Commercial Appeal*, Trevor Aronson, Lance Murphey, and Dale Massad ("Defendants").  First Amended Compl. ¶¶ 2, 3.  Plaintiffs have alleged that Defendants defamed them in an article and short sidebar that was published in *The Commercial Appeal* on February 11, 2007 (the "Article").  *Id*. at ¶ 12.  The Article was authored by Trevor Aronson ("Aronson") who is employed by *The Commercial Appeal*.  *Id*.  The Article described a lawsuit pending in a Delaware state court involving Plaintiffs and a former business partner named Richard Long.  *Id*. at ¶ 15.  In addition to the Delaware lawsuit, the Article further chronicled the past business dealings and other lawsuits involving Plaintiffs and their collection of Elvis Presley memorabilia.  *Id*.  Plaintiffs allege that the Article portrayed them as "dishonest, loathsome, and unsavory persons."  *Id*. at ¶ 20.

Plaintiffs' First Amended Complaint contains the following theories of recovery all arising from the Articles appearing in *The Commercial Appeal*: defamation, false light, libel per

---

[2] Plaintiffs' Response to the initial Motion briefed the applicable law of the state of Nevada because at that time Nevada was the forum state.  However, Plaintiffs have not responded to Defendants' arguments concerning Tennessee law.

se, negligence, and copyright infringement.  Plaintiffs have alleged that many of the assertions of fact contained in the Article as well as the captions and photographs associated with the Article have defamed them or depicted them in a false light.  *Id*. at ¶¶ 15-32.  Plaintiffs have cited twenty-five (25) statements in all from the Article which they allege to be defamatory.  Plaintiffs also contend that Lance Murphey ("Murphey") took photographs of Plaintiffs and Plaintiffs' copyrighted photographs to be used in the Article.  *Id*. at ¶ 33.  According to Plaintiffs, when the Article appeared on *The Commercial Appeal*'s website, viewers could purchase the photographs associated with the Article containing Plaintiffs' copyrighted material.  *Id*.  Therefore, Plaintiffs allege that *The Commercial Appeal* sold the photographs without the permission of Plaintiffs in violation of Plaintiffs' copyright.  *Id*.

In this case the challenged statements found in the Article were based on court records and proceedings involving Plaintiffs and various partners over a span of years.  Plaintiffs attached many of these records to their Complaint, and Defendants have referred extensively to the same records and proceedings in their Motion.  Therefore, the Court will review the allegations of the separate legal actions involving Plaintiffs.

According to the Amended Complaint, Richard Long filed a lawsuit in Delaware state court on November 17, 2006, against Plaintiffs.  Am. Compl. ¶ 11.  According to Long's complaint in the Delaware lawsuit, Long and Plaintiff Gallagher had discussed a business venture in which Gallagher sought Long's investment for the purpose of acquiring the rights to a collection of Elvis memorabilia known as "Dr. Nick's Memories of Elvis" ("the memorabilia").[3] Plaintiffs had arranged for the construction of portable displays to be used to transport and

---

[3] Dela. Compl. ¶ 5.  Dr. George Nichopoulos was Elvis Presley's personal physician.  *Id*.

display the memorabilia for profit.[4]   However, Plaintiffs had been unable to convince Long to

invest in the venture.  In April 2006, Plaintiffs again approached Long about the venture urging

him to act quickly because Dr. Nickopoulos had given Plaintiff Gallagher a deadline to purchase

Dr. Nickopoulos' collection.[5]   Plaintiffs also believed that the new owner of Elvis Presley

Enterprises might obstruct their efforts to exhibit the memorabilia for profit.[6]   Plaintiffs

convinced Long to invest in the venture.  Under the terms of their agreement, Long was to invest

$1 million which would be used to acquire Dr. Nickopoulos' memorabilia.[7]   Long also made a

separate loan of $200,000 to Plaintiff Gallagher "to cover a side agreement Mr. Gallagher had

with Dr. Nick."[8]   At the closing of the transaction on April 26, 2006, it was revealed that

Plaintiffs did not have a present ownership interest in the memorabilia but a future one in which

Plaintiffs would receive half of any proceeds from the sale of the memorabilia if the memorabilia

was ever sold.[9]   Following this development, Long insisted that the transaction documents be

altered to show that LGF, Inc., the corporation Long and Plaintiffs had formed to hold the

memorabilia, would have all ownership interest in the memorabilia and the portable displays.[10]

-------

[4] *Id.*

[5] *Id.* at ¶ 6.

[6] *Id.* at ¶ 7.

[7] *Id.* at ¶ 10.

[8] *Id.* at ¶ 12.

[9] *Id.* at ¶ 13.

[10] *Id.* at ¶ 14.

Prior to closing, Nichopoulos had delivered the memorabilia to Plaintiffs.[11]

Long goes on to allege in the Delaware lawsuit that Plaintiffs failed to execute a promissory note for the $200,000 loan he made to Gallagher, the memorabilia remained in undisclosed locations in Nevada, and Plaintiffs refused to provide photographs and other information about the collection required to insurance it.[12]  Long also alleges that Plaintiffs had offered to buy out Long's interest in the venture by finding a new investor.[13]  Notwithstanding Plaintiffs' promises, a buyer has not been forthcoming.[14]  Long sought a declaratory judgment that the various legal instruments drafted as part of the memorabilia transaction and the formation of the corporation which would hold title to the memorabilia were legally enforceable.[15]  Long further sought specific performance of the agreements with Plaintiffs in the form of delivery of the memorabilia to LGF, Inc.[16]

The Article also refers to prior litigation against Plaintiffs in the states of Florida, Tennessee, and Oklahoma.  All three lawsuits involve the claims of Dale Massad and his mother Geraldine Massad against Plaintiffs for repayment of loans the Massads made to Plaintiffs where Plaintiff pledged the memorabilia as collateral.  In the Florida suit, Dale Massad alleged that he

---

[11] *Id*. at ¶ 15.

[12] *Id*. at ¶ 16.

[13] *Id*. at ¶ 17.

[14] *Id*.

[15] *Id*. at ¶ 20.

[16] *Id*. at ¶ 25.

had made over $78,000 in loans to Plaintiffs dating from 1987 to 1998.[17]  As to one of the loans, Plaintiffs signed a promissory note in favor of Massad but with the terms of loan left blank.[18] According to Massad, Plaintiffs had suggested that the terms should be left blank because of the possibility of future loans from Massad.[19]  Plaintiffs gave Massad a key which they claimed would open a safe deposit box containing the memorabilia, the same collection which was the subject of the Delaware lawsuit.[20]  Massad subsequently discovered that the memorabilia was removed from the box, and Plaintiffs refused to disclose its location.[21]  Plaintiffs then informed Massad that they were planning to sell the memorabilia and would repay him the full amount owed within thirty (30) days.[22]  Plaintiffs later admitted to Massad that they did not have ownership of the memorabilia.[23]  Massad went on to amend his complaint to add a claim of fraud against Plaintiffs.[24]  In addition to misrepresenting their ownership interest in the memorabilia, Plaintiffs also pledged as collateral what they represented to be a 1989 Eagle tour bus worth

---

[17] Fla. Compl. ¶ 5.

[18] *Id*. at ¶ 13.

[19] *Id*.

[20] *Id*. at ¶ 9.

[21] *Id*.

[22] *Id*. at ¶ 10.

[23] *Id*. at ¶11.

[24] Am. Fla. Compl. ¶ 20.

$200,000.[25]  In fact, the bus was a 1969 model worth $50,000.[26]  It appears to the Court that Plaintiffs, for reasons the record does not reveal, did not attend the trial in the Florida lawsuit.[27] The Florida court made its findings of facts and entered judgment in favor of Massad against Plaintiffs in the amount of $112,670.00 plus interest.[28]

Geraldine Massad ("Ms. Massad") filed her complaint in the Tennessee suit on March 31, 1999.  In that complaint, Ms. Massad alleged that she had made a loan to Plaintiffs of $50,000.[29]  As collateral, Plaintiffs pledged the title to the 1969 Eagle tour bus and listed Ms. Massad as the first lienholder on the title.[30]  Plaintiffs failed to make any payments on the loan and continued to drive the tour bus.[31]  Ms. Massad requested that the Tennessee court attach the tour bus to prevent Plaintiffs from leaving the jurisdiction with it.[32]  The Tennessee court entered an order authorizing the sale of the tour bus in partial satisfaction of the loan and subsequently entered judgment in favor of Ms. Massad.[33]

---

[25] *Id*. at ¶ 25.

[26] *Id*.  Plaintiffs pledged the same bus as collateral for a loan advanced by Geraldine Massad, the mother of Dale Massad.

[27] Final Judgment, Circuit Court of Pinnellas County, Florida, 99-100-CI-20, Dec. 14, 2000.

[28] *Id*.

[29] Tenn. Compl. ¶ 1.

[30] *Id*.

[31] *Id*. at ¶¶ 3, 5.

[32] *Id*. at ¶¶ 6-7.

[33] Order Granting Mot. to Sell Collateral, Chancery Court of Tennessee, Thirtieth Judicial Dist., Memphis, 99-0283-3, Nov. 22, 1999; Judgment for Pl., Chancery Court of Tennessee,

In the Oklahoma suit, Ms. Massad filed her complaint on July 17, 2000.  Ms. Massad alleged that Plaintiffs had sought a loan from her for which they pledged the memorabilia, which they estimated to be worth $1 million, as well as the tour bus to which they assigned a value of $150,000.[34]  According to Ms. Massad, Plaintiffs showed her lists that purportedly cataloged the memorabilia they owned.[35]  The Oklahoma complaint also recounted how Ms. Massad had repossessed the tour bus to satisfy the debt Plaintiffs owed her only to discover that the bus was a 1969 model, which was worth $23,500.[36]  Ms. Massad sought over $11,600 in damages for money Plaintiffs still owed.[37]

In their Motion to Dismiss before the Court, Defendants have argued that Plaintiffs have failed to state any of their claims.  First, Defendants contend that many of the challenged statements in the Article were based on court records in various civil suits against Plaintiffs, several of which resulted in judgments against Plaintiffs.  According to Defendants, the lawsuits demonstrate a pattern in Plaintiffs' dealings with respect to the Elvis memorabilia: Plaintiffs reneged on loans or business deals involving the memorabilia forcing their creditors to go to court to seek repayment.  Defendants point out that in some of the cases the creditors included fraud claims against Plaintiffs.  The statements are thus substantially true.  All of the challenged statements are either quoted directly from court records and deposition testimony from the

---

Thirtieth Judicial Dist., Memphis, 99-0283-3, Apr. 2, 2001.

[34] Okla. Compl. ¶ 1.

[35] *Id*. at ¶ 4.

[36] *Id*. at ¶ 2.

[37] *Id*. at ¶ 5.

various lawsuits or are true accounts of court proceedings.  As a result, Plaintiffs cannot state defamation claims because the statements in the Articles are truthful, privileged, or otherwise protected.

Second, any claims against Defendant Massad are time-barred by Tennessee's one-year statute of limitations.  All of the statements attributed to Massad were made during a deposition on June 17, 2002.  Plaintiffs filed their initial Complaint on March 23, 2007.  Therefore, their claims against Massad are untimely.  Third, the judicial proceedings privilege protects all of the statements attributed to Massad as well as Defendants David Finger and Finger & Slanina, LLC. Fourth, certain statements referring to Gallagher as "an alleged con man" are protected as opinion.  The First Amendment and the Tennessee Constitution protect such statements of opinion.  Next, several of the challenged statements are not even defamatory either because they do not convey a defamatory message or because Plaintiffs are libel-proof.  Defendants then argue that negligence is not the proper standard of fault.  Plaintiffs must show actual malice because they are public figures and the alleged defamatory statements involve a public controversy. Finally, Defendants contend that Plaintiffs have failed to state a claim for copyright infringement because they have failed to allege that their material is copyrighted, a jurisdictional prerequisite for bringing a claim of copyright infringement.

Although Plaintiffs have failed to respond to Defendants argument concerning applicable Tennessee law, Plaintiffs did file a response to Defendants' Motion while this matter was still pending in Nevada in which Plaintiffs briefed the applicable standards of Nevada law.[38]

---

[38] Plaintiffs have, in fact, filed two responses, one to the initial motion to dismiss (D.E. # 49-24), and a second to Defendants' motion to dismiss the amended complaint (D.E. # 49-34). Plaintiffs' second response incorporated by reference the arguments raised in the first response.

Plaintiffs contend that the challenged statements are offered in the Article as facts and thus are not entitled to protection as opinion statements.  Plaintiffs argue in conclusory fashion that the statements are at least susceptible to different constructions, and their respective meanings are thus questions of fact for a jury to decide.  As for Plaintiffs' copyright infringement claim, Plaintiffs contend that a work is copyrighted at the time it is created.  Plaintiffs further allege that they have properly registered their copyright.  Plaintiffs also contend that the following statement should be analyzed under the fair-reporting privilege, not the judicial proceedings privilege: "We don't think [Freeman] ever intended to exhibit the collection.  It's his next egg. He flashes it to get money, and then disappears."  The statement appeared in the Article and was attributed to David Finger, the attorney representing Richard Long in the Delaware lawsuit. Plaintiffs argue that Finger's statement was a summary without "neutrality and balance" and therefore fails to qualify for the fair reporting privilege.

## STANDARD OF REVIEW

A defendant may move to dismiss a claim "for failure to state a claim upon which relief can be granted" under Federal Rule of Civil Procedure 12(b)(6).  When considering a Rule 12(b)(6) motion, the Court must treat all of the well-pleaded allegations of the complaint as true and construe all of the allegations in the light most favorable to the non-moving party.[39]

---

The Court also notes that Plaintiff argued that as *pro se* parties, they should not be held to the same standard as an attorney.  Pls.' Resp. 11 (D.E. # 49-24).  However, it appears to the Court that Plaintiffs have retained counsel.

[39] *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974); *Saylor v. Parker Seal Co.*, 975 F.2d 252, 254 (6th Cir. 1992).

However, legal conclusions or unwarranted factual inferences need not be accepted as true.[40]
"To avoid dismissal under Rule 12(b)(6), a complaint must contain either direct or inferential
allegations with respect to all material elements of the claim."[41]  "The Federal Rules of Civil
Procedure do not require a claimant to set out in detail all the facts upon which he bases his
claim."[42]

The Supreme Court has more recently stated that the Federal Rules "do not require a
heightened fact pleading of specifics, but only enough facts to state a claim that is plausible on
its face."[43]  The Sixth Circuit has subsequently acknowledged "[s]ignificant uncertainty" as to
the intended scope of *Twombly*.[44]  Consequently, the Sixth Circuit has articulated the following
as the standard of review for 12(b)(6) motions: on a motion to dismiss, the Court must construe
the complaint in the light most favorable to the plaintiff, accept all factual allegations as true, and
determine whether the complaint contains "enough facts to state a claim to relief that is plausible
on its face."[45]  Thus, although the factual allegations in a complaint need not be detailed, they

---

[40] *Morgan v. Church's Fried Chicken*, 829 F.2d 10, 12 (6th Cir. 1987).

[41] *Wittstock v. Mark a Van Sile, Inc.*, 330 F.3d 889, 902 (6th Cir. 2003).

[42] *Conley v. Gibson*, 355 U.S. 41, 47 (1957).

[43] *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955, 1974 (2007) ("retiring" the "no set of facts" standard first announced in *Conley v. Gibson*, 355 U.S. 41, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)).

[44] *Weisbarth v. Geauga Park Dist.*, 499 F.3d 538, 541 (6th Cir.2007); *see also Commercial Money Ctr., Inc. v. Ill. Union Ins. Co.*, 508 F.3d 327, 337 (6th Cir.2007) ("We have noted some uncertainty concerning the scope of *Bell Atlantic Corp. v. Twombly*, ... in which the Supreme Court 'retired' the 'no set of facts' formulation of the Rule 12(b)(6) standard ....").

[45] *United States ex rel. Bledsoe v. Cmty. Health Sys., Inc.*, 501 F.3d 493, 502 (6th Cir. 2007) (quoting *Twombly*, 127 S.Ct. at 1974 (2007)).

"must do more than create speculation or suspicion of a legally cognizable cause of action; they must show entitlement to relief."[46]

Typically, matters outside the pleadings may not be considered in ruling on a Rule 12(b)(6) motion such as the one before the Court unless the motion is converted to a motion for summary judgment.[47]  However, a court may consider any documents attached to a motion to dismiss to be part of the pleadings if they are referred to in the plaintiff's complaint and are central to the plaintiff's claim.[48]  In this case, Plaintiffs' allegations concern the manner in which Defendants reported on Plaintiff's prior business dealings and litigation arising from those business relationships.  Plaintiffs have cited the court records in those cases and attached them to their Complaint.  Defendants have answered that the alleged defamatory statements in the Article were based on the same court records.  Therefore, the Court will consider the court records cited by Plaintiffs and Defendants without converting the instant Motion to Dismiss to a motion for summary judgment.

## ANALYSIS

The Court holds that Plaintiffs have failed to state any of their claims, and so their Amended Complaint should be dismissed.  Plaintiffs' have brought claims against a variety of Defendants and under several legal theories.  The Court will analyze each claim in turn.

---

[46] *League of United Latin Am. Citizens v. Bredesen,* 500 F.3d 523, 527 (6th Cir.2007) (emphasis in original) (citing *Twombly,* 127 S.Ct. at 1964-65).

[47] *Weiner v. Klais & Co.*, 108 F.3d 86, 88 (6th Cir. 1997).

[48] *Id*. at 89.

I.      **Libel Per Se**

Plaintiffs' Amended Complaint includes a claim for libel *per se*.  Under Tennessee law, libel *per se* is no longer available in light of the Supreme Court's decision in *Gertz v. Rober Welch, Inc.*, 418 U.S. 323, 94 S. Ct. 2997, 41 789 L.Ed.2d (1974).[49]  "The plaintiff must plead and prove injury from the alleged defamatory words, whether their defamatory meaning be obvious or not."[50]  Therefore, Plaintiffs' claim for libel *per se* is dismissed.


II.     **Negligence**

Plaintiffs' Amended Complaint also contains an allegation of common law negligence against Defendants for their publication of "false, misleading, defamatory statements." However, the Court finds that Plaintiffs do not have a general claim for the tort of negligence in this case.  Rather Plaintiffs' allegations as to this separate count are in fact allegations of defamation or libel, not simple negligence.  It is true that the negligence standard of care could apply where a plaintiff shows that he or she is a private person, not a public figure or public official.[51]  However, Plaintiffs in this case are not just arguing that the negligence standard, and not the malice standard, should apply.  Plaintiffs have attempted to state a separate cause of action for negligence against Defendants. Therefore, Plaintiffs' have failed to state a claim for negligence as to any Defendant.

---

[49] *Memphis Publ'g Co. v. Nichols*, 569 S.W.2d 412, 419 (Tenn. 1978).

[50] *Id.*

[51] *Lewis v. NewsChannel 5 Network, L.P.*, 238 S.W.3d 270, 300 (Tenn.Ct.App. 2007).

### III.    Copyright Infringement

Plaintiffs have alleged that Defendants violated their copyright by placing certain images on the Commercial Appeal website and making those images available for purchase by the public.  Title 17 U.S.C. § 411(a) requires, "[N]o action for infringement of the copyright in any United States work shall be instituted until registration of the copyright claim has been made in accordance with this title."[52]  In this case, Plaintiffs have failed to allege that their materials were actual registered as a copyright claim.  Plaintiffs have simply alleged that Defendants violated a copyright.  Therefore, the Court holds that Plaintiffs have failed to state a claim for copyright infringement.

### IV.    Claims Against Dale Massad

Plaintiffs have failed to state a claim against Defendant Dale Massad.  It is undisputed that the quotations from Massad were made by Massad during a July 17, 2002 deposition.  There is a one-year statute of limitations for libel defamation and false light under Tennessee law.[53]  Plaintiffs filed their original complaint in this case on March 23, 2007.  Therefore, Plaintiffs' claims against Dale Massad are now time-barred.

---

[52] 17 U.S.C. § 411(a); *Murray Hill Publications, Inc. v. ABC Communications, Inc.*, 264 F.3d 622, 630 (6th Cir. 2001).

[53] Tenn. Code Ann. § 28-3-104(a)(1); *West v. Media General Convergence, Inc.*, 53 S.W.3d 640, 649 (Tenn. 2001) (adopting libel's statute of limitations for false light claims).

## V.        *Defamation and False Light*

To establish a *prima facie* case of defamation in Tennessee, the plaintiff must establish that: (1) there must be a false statement of fact; (2) that has a defamatory meaning toward the plaintiff; (3) that was published by the defendant; (4) that was the proximate cause of damages to plaintiff; and (5) that the defendant acted with the requisite degree of fault.[54]  While the issue of whether a statement may be understood by readers in a defamatory sense is ultimately a question for the jury, preliminary determination of whether a statement is capable of being so understood is a question of law to be determined by the court.[55]

"The basis for an action for defamation is that the defamation has resulted in an injury to the person's character and reputation."[56]  In order to state a claim, the allegedly defamatory statement must "constitute a serious threat to the plaintiff's reputation."[57]  Additionally, damages from false or inaccurate statements cannot be presumed; actual damage must be sustained and proved.[58]

To establish a *prima facie* case of the related tort of false light in Tennessee, the plaintiff must establish the following elements: (1) publicity, (2) that places the plaintiff in a false light that is (3) highly offensive to a reasonable person and (4) made with the requisite degree of

---

[54] *Sullivan Baptist Mem'l Hosp.*, 995 S.W.2d 569, 571 (Tenn. 1999)

[55] *Memphis Pub. Co. v. Nichols*, 569 S.W.2d 412, 419 (Tenn. 1978).

[56] *Quality Auto Parts, Inc. v. Bluff City Buick Co., Inc.*, 876 S.W.2d 818, 820 Tenn. 1994).

[57] *Stones River Motors, Inc. v. Mid-South Publ'g Co.,* 651 S.W.2d 713, 719 (Tenn. Ct. App. 1983).

[58] *Nichols,* 569 S.W.2d at 416, 419.

fault.[59]  The truth of facts published is not an absolute defense to a false light claim "where the implication of the communication as a whole was false."[60]  However, Tennessee law recognizes that false light like defamation involves the publication of false information.[61]  In recognition of the kinship between defamation and false light, the Tennessee Supreme Court has defined the contours of the tort of false light with reference to the Tennessee law on defamation.[62]  Therefore, like defamation, the Court must make the preliminary determination about whether a defendant made discrete presentations of information in a fashion which rendered the publication susceptible to inferences casting the plaintiff in a false light.[63]

### A.  Plaintiff Robert Gallagher

Even construing the allegations of the Amended Complaint in a light most favorable to Gallagher, the Court finds that under Tennessee law Gallagher has failed to state any of his claims against the remaining Defendants.  Many of the alleged defamatory statements found in the Article are true or substantially true.  The truth of a statement is a "nearly absolute" defense to claims of libel or defamation.[64]  The Court finds that other statements are not capable of being

___

[59] *West v. Media General Convergence, Inc.*, 53 S.W.3d 640, 643-44 (Tenn. 2001).

[60] *Id*. at 645, n. 5.

[61] *Id*.

[62] *Id*. at 645-649 (applying law governing defamation claims to false light in areas of requisite degree of fault; absolute and conditional privileges; pleading and proof of damages; and statute of limitations).

[63] *Id*. at 645, n. 5.

[64] *West v. Media General Convergence, Inc.*, 53 S.W.3d 640, 645 (Tenn. 2001); *Robertson v. The Leaf Chronicle*, 2007 WL 4523329, *2 (Tenn. Ct. App. 2007);  *Roche v. Home*

understood as defamatory as a matter of law because they do not constitute a serious threat to Gallagher's reputation.  Therefore, Gallagher's claims against the remaining Defendants should be dismissed for failure to state a claim.

Defendants have numbered and addressed each of the twenty-five (25) challenged statements separately, and Plaintiffs' briefs have followed this pattern.  It appears to the Court that most of the challenged statements relate to one of three categories: Plaintiffs' Delaware lawsuit with Richard Long; Plaintiffs' Florida, Oklahoma, and Tennessee lawsuits involving Dale Massad and Geraldine Massad; and Plaintiffs' miscellaneous prior dealings and associates. Therefore, the Court will examine Plaintiff's claims with respect to each category.

### 1.  Delaware lawsuit

According to Defendants, several of the challenged statements in the Article were based on the allegations in the Delaware complaint, other filings in the lawsuit, and interviews conducted by Aronson, the author of the Article.  Plaintiffs have identified the following statements from the Article about Plaintiffs' dealings with Long as defamatory:

1. "Belly up on Elvis[:] Wheeler-dealer of King mementos is caught in a trap, maybe of his own making."

2. "Bobby Freeman and his girlfriend and business manager Betty Franklin are being sued in a $1.2 million fraud case concerning Freeman's collection of Dr. Nick's Elvis Presley memorabilia."

3. "Freeman and Franklin disappeared with the only key to the storage facility containing the Presley memorabilia."

---

*Depot USA*, 197 Fed. Appx. 395, 399 (6th Cir. 2006).

4. "Down $1.2 million, Long had been duped."

5. "At the April meeting in Memphis, Long didn't realize Freeman, his business partner, is an alleged con man with a history of using Nichopoulos' Presley memorabilia as collateral on personal loans and business investments that have gone bad."

6. "Freeman's crude legal maneuverings have so far stalled Long's efforts to appraise, insure and seize the Presley collection."

7. "'While we think that Dr. Nick might not be the most honorable man, we have no reason to suspect he had knowledge or was involved in this scheme,' says Long's attorney, David Finger of Wilmington, Del." and "'We don't think he ever intended to exhibit the collection,' says Finger, Long's Delaware attorney. 'It's his nest egg. He flashes it to get money, and then disappears.'"

8. "Of course, these are the same semis and items Freeman allegedly used to bilk businessman Long out of $1.2 million."

9. "Freeman has left a trail of such debts throughout the country that he pegs at $1.5 million."

10. "Despite unpaid loans and broken promises, Freeman accomplished his stated goal of building an exhibit of the gifts Presley had given Nichopoulos."

According to Defendants, it is undisputed that Plaintiffs were sued for making a deal in which Richard Long paid $1.2 million to participate in a venture involving the memorabilia and that, after Long paid the money, Plaintiffs and Long could not agree on the terms of their venture. The record in the Delaware lawsuit demonstrates that Plaintiffs "lack of full disclosure of the nature of [their] interest in the Memorabilia" necessitated an alteration in the deal at the last minute and that Plaintiffs "claimed that no perjury was committed." The record shows that the Memorabilia was in Plaintiff's possession in "uninsured and unsecured locations in Nevada"

18

to which Long had no access.  The Delaware lawsuit also included Plaintiffs' failure to appear

for hearings and depositions which had the effect of stalling Long's efforts to appraise, insure

and seize the Memorabilia.  Plaintiffs were twice found in contempt for failing to comply with

court orders to produce the Memorabilia.  In a letter to the Delaware court, Plaintiff Gallagher

admitted that he had the only key to the storage facility where the Memorabilia was kept.  The

Delaware proceedings also referred to Plaintiffs' attempts to use the Memorabilia as collateral on

personal loans and other business investments.  Other court records corroborate the statement

that Plaintiffs debts and unpaid loans total at least $1.5 million.  Plaintiffs have alleged that the

statement that "Freeman and Franklin disappeared with the only key to the storage facility

containing the Presley memorabilia" was untrue and defamatory due to the fact that Plaintiffs

have maintained the same residence at all times pertinent to the events described in the Article.

Despite his arguments to the contrary, the Court holds that Gallagher has failed to state a

claim for defamation or false light as to any of the statements relating to the Delaware lawsuit.

With respect to all ten statements in question, the statements were true or substantially true.[65]

The Article accurately reported the allegations against Plaintiffs which were part of the Delaware

lawsuit and can be attributed to the briefs and other filings in that case.  Other statements simply

do not have a defamatory meaning as a matter of law.  Plaintiffs quibble that the Article referred

to Long's claim as a "$1.2 million fraud case" even though the suit did not involve any claim of

fraud.  The Court finds that this description, however, is substantially true: the record shows

Long alleged that Plaintiffs had solicited $1.2 million from Long as an investment in a venture

---

[65] *Stones River Motors, Inc. v. Mid-South Pub. Co.*, 651 S.W.2d 713, 720 (Tenn. Ct. App.
1983) (quoting W. Prosser, *Law of Torts,* § 116, p. 798 (4th Ed.1971)).

and that Plaintiffs had entered into a contract with Long to memorialize the terms of their relationship.  Long also alleged that Plaintiffs breached the agreement without justification. Long sought a declaratory judgment that an enforceable contract existed as well as the specific performance of that contract.  While the Delaware complaint never alleged fraud as a cause of action, it is substantially true that Long had accused Plaintiffs of defrauding him of $1.2 million. Furthermore, it is undisputed that Plaintiffs had been sued for fraud in separate litigation in the past.  On the whole Plaintiffs have failed to rebut Defendants' defense that the statements were all true or substantially true.  Therefore, the Court holds that Plaintiffs have failed to state a claim as to any of the statements relating to the Delaware lawsuit.

Turning to the statements attributed to David Finger in the Article, the Court begins by noting that Finger and the law firm of Finger & Slanina, LLC have been dismissed from this suit for lack of personal jurisdiction.  However, Plaintiffs' claim against the media Defendants for the publication of Finger's statements remains.  Under Tennessee law, statements made in the course of a "judicial proceeding that are relevant and pertinent to the issues involved are absolutely privileged and cannot be the predicate for liability in an action for libel, slander, or invasion of privacy."[66]  In order for the privilege to attach to an attorney's communication, each of the following elements must be satisfied: (1) the communication was made by an attorney acting in the capacity of counsel, (2) the communication was related to the subject matter of the proposed litigation, (3) the proposed proceeding must be under serious consideration by the attorney acting in good faith, and (4) the attorney must have a client or identifiable prospective client at

---

[66] *Lambdin Funeral Service, Inc. v. Griffith*,  559 S.W.2d 791, 792 (Tenn. 1978).

20

the time the communication is published.[67]  The Tennessee Supreme Court has also cited with

approval the following from the Restatement (Second) of Torts § 586 (1977):

> [a]n attorney at law is absolutely privileged to publish defamatory matter concerning another in communications preliminary to a proposed judicial proceeding, or in the institution of, or during the course and as part of, a judicial proceeding in which he participates as counsel, if it has some relation to the proceeding.[68]

The *Simpson Strong-Tie* Court concluded that the "privilege exists to protect zealous

advocacy."[69]

Based on the foregoing, it is clear that the judicial privilege applied to any statement

attributed to Finger.  Finger made his comments acting in his capacity as counsel for Long.  The

statements concerned the Delaware lawsuit Long had filed against Plaintiffs.  Finger made his

comments about the underlying facts of the lawsuit, and his statements were consistent with the

allegations contained in the complaint.  Finger was already retained by Long and had filed suit

on Long's behalf.  Therefore, the media Defendants were simply publishing Finger's privileged

statements and cannot be liable for any defamation because none occurred.

Having found that all of the statements pertaining to the Delaware lawsuit were either

true, substantially true, or privileged, the Court holds that Plaintiffs' claims as to these

statements should be dismissed.

### 2.  Florida, Tennessee, and Oklahoma lawsuits

---

[67] *Simpson Strong-Tie Co., Inc. v. Stewart, Estes & Donnell*, 232 S.W.3d 18, 24 (Tenn. 2007).

[68] *Id*. (extending privilege to defamatory remarks made during attorney's solicitations).

[69] *Id*.

According to Defendants, the next set of challenged statements in the Article was based on the allegations in the complaints, other court documents, and the Florida and Tennessee judgments entered in favor of Dale Massad and Ms. Massad in separate suits in Florida, Tennessee, and Oklahoma.  Plaintiffs have identified the following statements from the Article about Plaintiffs' dealings with the Massads as defamatory:

11.     "But Freeman's most extraordinary talent, say former friends and business associates, isn't for music.  It's for trickery."

12.     "'He gave me a key to a box that he had an Elvis Presley collection in and put my name on it,' Massad said, explaining how Freeman put up the memorabilia as collateral on the loan. After giving Freeman the money, Massad introduced the singer to his mother, Geraldine, in Lawton, Okla. Freeman then persuaded Geraldine Massad to lend him an additional $50,000. As he had done with her son, Freeman offered the collateral – the title to his tour bus, which he said was a 1989 Eagle worth $200,000, and a diamond ring he said belonged to Presley."

13.     "Freeman is also obligated to repay a Florida man $100,000."

14.     "In early 1998 Massad gave Freeman $68,000. Massad said it was a loan: Freeman described it as an investment. Either way, the money involved Nichopoulos' Presley memorabilia."

15.     "Dale Massad then came to Memphis to collect the Presley memorabilia, including the ring that was to go to his mother.  He discovered the safety-deposit box had a bill attached to it for $750. Massad figured Freeman had emptied it and fled. 'I wasn't willing to risk $750 to go behind the green door,' Massad said."

16.     "On Feb. 29, 2000, Florida Judge Charles W. Cope dismissed Freeman's testimony as 'not credible' and entered a judgment against the singer."

17.     "It would be a great tale were it not for Freeman's trouble with telling the truth."

18.     "During this time, Nichopoulos was kept in the dark."

Defendants have cited for support the deposition testimony of Dale Massad and Ms. Massad in the Tennessee lawsuit about their broken friendship with Plaintiffs over the bad loans as well as the other documents on the records of these lawsuits. All of the challenged statements are taken from the court documents filed in these cases.

The Court holds that Gallagher has failed to state any claim as to any of these statements from the Article. Gallagher has failed to allege how these particular statements were harmful to his interests, that is, how the statements actually defamed him. For example, Gallagher alleges that the statement "In early 1998 Massad gave Freeman $68,000. Massad said it was a loan: Freeman described it as an investment. Either way, the money involved Nichopoulos' Presley memorabilia" was inaccurate because the money represented an investment in Plaintiff Gallagher's singing career, not the memorabilia. Gallagher also contends that the statement attributed to Dale Massad "He gave me a key to a box that he had an Elvis Presley collection in and put my name on it,' Massad said, explaining how Freeman put up the memorabilia as collateral on the loan" was factually inaccurate. The Court finds as a matter of law that neither statement is defamatory because the statements are not capable of being understood as a serious threat to Gallagher's reputation.

Other statements concerning the Massads are accurate reports of judicial proceedings and court records and are privileged. The statements attributed to Massad are quoted from his 2002 deposition, and the Court has already concluded that any claim against Massad as to these statements is now time-barred. However, Gallagher's claim against the media Defendants for the publication of Massad's statements also fails. Massad's statements are privileged because they were made during the course of a judicial proceeding. Because Massad's statements do not

23

constitute defamation, Gallagher has failed to state a claim against the media Defendants' for the publication of the same statements.

Gallagher further argues that the judge in the Florida lawsuit was biased against him and consequently found Gallagher to be "not credible."[70]  The fact remains, however, that the Florida judge did find on the record that Gallagher's testimony in that case was not credible.  Gallagher also complains that the statement about owing a Florida man $100,000 is factually inaccurate because that debt is owed Dale Massad.  However, it is clear that in context this statement refers to Massad, a Florida resident.

The only statement in this group which might be susceptible to a defamatory construction, "It would be a great tale were it not for [Plaintiff]'s trouble with telling the truth," is well-supported by a series of factual examples in the Article.  For example, when Gallagher initially denied knowing a woman named Kim Garrett, the reporter pointed out that Gallagher was pictured with her in old newspaper accounts to which Plaintiff Franklin responded, "Bobby gets things confused."  Gallagher also denied that he knew that he was wanted by the FBI for ten years.  When the reporter pointed out that Gallagher had testified in 2002 that he had changed his identity and obtained a new social security number because "he was having trouble," Gallagher changed his story.  Gallagher responded that he actually did know he was being sought by the FBI but did not know that he had been charged with receiving a stolen tour bus.  Taken as a whole, the Article more than supports this assertion with other examples which call Gallagher's credibility into question.  Therefore, the Court finds that as a matter of law, the statement is not

---

[70] Plaintiffs use this statement to launch an attack on Dale Massad's character.  It is unclear to the Court how those facts state a claim against the media Defendants for the statement in the Article that the Florida court found Gallagher not credible.

defamatory.

Having considered the statements made with reference to Plaintiffs' dealings with the

Massads, the Court finds that Plaintiffs have failed to state a claim.

### 3.    *Plaintiffs' Miscellaneous Prior Dealings and Associates*

Plaintiffs have identified the following statements from the Article about Plaintiffs'

miscellaneous prior dealings as defamatory:

19.    "He owes a former business manager from Oregon $300,000, records show. . . .
Freeman wouldn't pay back money she invested in the band."

20.    "Freeman is often 'confused' not only about his many debts but also his criminal

past."

21.    "According to federal prosecutors, Freeman and another man, Rufus Albert
Elledge, changed the bus' vehicle-identification number and then toured the country as Freeman
continued to perform on the road."

22.    "Upon release from prison, Freeman moved to Memphis and established a
friendship with Nichopoulos . . ."

23.    "In November 1999, local PBS affiliate WKNO-TV Channel 10 produced and
aired a one-hour special on Freeman's life titled 'Who is Bobby Freeman?' . . .The WKNO show
did not mention Freeman's felony conviction or his debts."

24.    "Backup in prison: Cher look-alike gets 36 years for fraud."

25.    "Bobby Freeman's Protégé? . . . Speros stayed with the band for about a year
before returning to her native Denver, Colo. That's when she began a life of fraud not unlike the
one Freeman is alleged to lead . . . Speros was sentenced to 36 years in state prison after being
found guilty of 17 counts of defrauding banks and individuals in Denver out of $150,000 in a
matter of months. For Speros, now 48, it's her fifth prison stint. Previously, the former singer has

25

been ordered to prison for bank fraud, money laundering for drug dealers, and lying about inheritances and divorce settlements to deceive people."

The Court finds that Gallagher has failed to state a claim as to any of these statements. Several of the statements are true or substantially true. While Gallagher complains that the Oregon judgment against him was a default judgment entered erroneously, Gallagher does not deny that the judgment exists or allege how the Article's report of the $300,000 judgment was factually false. Gallagher does not deny that he and another man changed the VIN on a tour bus, although he does contend that he never used the bus to tour the country with his musical act. Even if the statement is false, Gallagher has failed to allege how that statement harmed his interests or cast him in a false light. Similarly, Gallagher argues that the statement that "Upon release from prison, [Gallagher] moved to Memphis and established a friendship with Nichopoulos . . ." is factually inaccurate because Gallagher and Dr. Nichopolous had been friends since the 1970s. Again Gallagher has not alleged how this statement even if false harmed his interests. Plaintiffs go on to allege that with respect to the statement that "The WKNO show did not mention Freeman's felony conviction or his debts" WKNO was aware of Plaintiff's felony conviction. With respect to this statement, Gallagher not only has failed to allege that the WKNO statement harmed his interests, he has also failed to even show that the statement is false. Therefore, the Court finds that Gallagher has failed to state any claim against Defendants as to these statements.

A short sidebar to the primary Article also contains information about the criminal activities of Christine Speros, a former back-up singer in Gallagher's musical act. Gallagher alleges without specificity that the short sidebar and its headline about Christine Speros ("the

26

Speros statements") are defamatory and hold Gallagher in a false light. Defendants have argued that the Speros statements are factually accurate and Plaintiffs have failed to allege how the statements are directed at them. The Court holds that the Speros statements do not constitute defamation as to Gallagher because the Speros statements are true and do not harm Gallagher's interests.

As for Gallagher's false light claim as to the Speros statements, the Court holds that as a matter of law, the Speros statements were not made in a fashion which would render them susceptible to an inference of casting Gallagher in a false light. The connection between the Speros statements and Gallagher is tenuous at best. The Speros statements are presented in a sidebar outside the Article itself and briefly allude to the fact that a former associate of Gallagher had engaged in a life of crime. The only statement that connected Speros to Gallagher read, "That's when she began a life of fraud not unlike the one Freeman is alleged to lead." The sidebar also included a quotation from Gallagher in which he responded to the information about Speros as follows: "I had no idea. That's just a shame. She came from such a nice family." Otherwise the sidebar had little relevance to the story on Gallagher.

While it is not clear to the Court how the Speros statements are actually relevant to the story on Gallagher, the Court holds that the sidebar is not susceptible to an inference of casting Gallagher in a false light. The headline which suggests that Speros was Gallagher's protégé and even the rest of the Speros statements are the very "sort of loose, figurative or hyperbolic language which would negate the impression that the writer was seriously maintaining that"

Gallagher had mentored Speros as some kind of con artist.[71]  In so far as the sidebar arguably casts Gallagher in a false light, it cannot be said that the true statements in the sidebar taken together with the other true statements in the Article would be highly offensive to a reasonable person.  Therefore, Gallagher has failed to state his claim of false light as the Speros statements.

Having considered the twenty-five (25) challenged statements which refer to Gallagher, the Court concludes that Gallagher has failed to state a claim of defamation or false light as to all of them.  Therefore, Gallagher's claims against the remaining Defendants are dismissed.

### B. Plaintiff Betty Franklin

It is undisputed that most of the challenged statements in the Article do not concern Plaintiff Betty Franklin ("Franklin").  Of the twenty-five (25) statements identified in the Amended Complaint, only two refer to Franklin.  The rest concern Gallagher.  Therefore, as a matter of law, Franklin has failed to state any claims against Defendants for any statements which do not refer to her.

As for the two statements where Franklin is mentioned, the Court finds as a matter of law that she has failed to state a claim.  The first challenged statement which mentions Franklin reads as follows: "Bobby Freeman and his girlfriend and business manager Betty Franklin are being sued in a $1.2 million fraud case concerning Freeman's collection of Dr. Nick's Elvis Presley memorabilia."  Franklin contends that the statement is factually inaccurate because the lawsuit in

---

[71] *Milkovich v. Lorain Journal Co.,* 497 U.S. 1, 21 (1990); *see also Stilts v. Globe Intern., Inc.*, 950 F.Supp. 220, 224 (M.D. Tenn. 1995).

question does not involve a claim of fraud.  For reasons discussed *supra*, the Court finds that this statement is not susceptible to a defamatory construction.  Even if the Court determined that the description of the suit as a "fraud" case was not substantially true, Franklin has failed to allege how the statement damaged her interests, that is, how the statement is defamatory.  Furthermore, Franklin has failed to allege how the statement holds her in a false light.  Therefore, the Court concludes that Franklin has failed to state a claim as to this statement.

The second statement referring to Franklin reads, "Freeman and Franklin disappeared with the only key to the storage facility containing the Presley memorabilia."  Defendants argue that Gallagher admitted to "being the key" to locating the memorabilia.  Furthermore, the Court holds that as a matter of law, Franklin has failed to allege how this statement defamed her and harmed her interests or held her in a false light.  Therefore, Franklin has failed to state a claim as to this statement.

Having found that only two of the challenged statements in the Article mention Franklin, the Court finds that Franklin has failed to state a claim as to either statement.  Franklin is thereby dismissed from this suit.

## CONCLUSION

Plaintiffs have failed to state any of their claims against Defendants.  Plaintiffs' claims of libel *per se* no longer exist under Tennessee law.  Plaintiffs have failed to state a separate claim for negligence against any Defendants.  Plaintiffs' claim for copyright infringement must fail because Plaintiffs have failed to allege that they hold a valid copyright to the material in question.  Plaintiffs's claims against Dale Massad are dismissed as time-barred.  Plaintiff

Gallagher has failed to state his claim for defamation as to all of the challenged statements due to the fact that the statements are true, substantially true, not harmful to his interests, or privileged. As for his false light claim, Gallagher has failed to allege how the true and privilege statements in the Article and sidebar would be highly offensive to a reasonable person.  Plaintiff Franklin has failed to state any claim as to the two challenged statements mentioning her.  Therefore, Defendants' Motion to Dismiss Plaintiffs' Amended Complaint is **GRANTED**.

      **IT IS SO ORDERED.**

                    **s/ S. Thomas Anderson**
                    S. THOMAS ANDERSON
                    UNITED STATES DISTRICT JUDGE

                    Date: May 28th, 2009.